Case: 1:21-mj-00286
Assigned To : Faruqui, Zia M.
Assign. Date : 03/06/2021
Description: Complaint w/ Arrest Warrant

STATEMENT OF FACTS

On January 6, 2021, your affiant, Riley Palmertree, was on duty and performing my official duties as a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been a Special Agent since 2017 and, in additional to my regular duties, I am currently also tasked with investigating criminal activity that occurred in and around the Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, investigation, or prosecution of a violation of Federal criminal laws.

The information contained in this affidavit is based on my knowledge of the investigation and information provided by other law enforcement officers. Because this statement of facts is being submitted for the limited purpose of establishing facts sufficient for the charges in the complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence exists of violations of the following statutes: 18 U.S.C. §§ 111 (a) and (b) (Assaulting an Officer of the United States with a deadly or dangerous weapon); 18 U.S.C. § 372 (Conspiracy to injure an officer); 18 U.S.C. § 231 (Civil Disorder); 18 U.S.C. § 1512(c)(2) (Obstruction of an Official Proceeding); 18 U.S.C. § 1752(a) and (b) (Physical violence on restricted grounds, while carrying dangerous weapon, and resulting in significant bodily injury); 40 U.S.C. § 5104(e)(2)(f) (Violent Entry, Disorderly Conduct and act of physical violence on Capitol Grounds); and 18 U.S.C. 2 (Aiding and Abetting).

1. Background

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

2. Defendants' Assault on Federal Officers

At approximately 1:00 p.m., a crowd of violent rioters had assembled on the Lower West Terrace. U. S. Capitol Police had formed a line of bike racks extending from the North end of the Lower West Terrace to the South end, to act as a barrier against the crowd. Officers were standing watch behind this line and fending off repeated attempts by the rioters to pull on the bike racks, either with their hands or with ropes and straps.

In reviewing surveillance footage of this incident, your affiant observed the defendants, JULIAN ELIE KHATER and GEORGE PIERRE TANIOS, working together to assault law enforcement officers with an unknown chemical substance by spraying officers directly in the face and eyes. Your affiant further observed these defendants appeared to time the deployment of chemical substances to coincide with other rioters' efforts to forcibly remove the bike rack barriers that were preventing the rioters from moving closer to the Capitol building.

Surveillance footage shows that at 2:09 p.m., TANIOS can be seen walking from the south grassy area toward the Lower West Terrace. KHATER can be seen walking behind TANIOS. KHATER is wearing a beanie with a pom-pom on top, a dark jacket, and has a beard. TANIOS is wearing a red hat, black backpack, dark hooded sweatshirt, and has a beard. At 2:14 p.m., TANIOS and KHATER can be seen engaging each other in animated conversation while they are standing together.

During the investigation, law enforcement discovered open source media video of the incident from January 6, 2021. On the video, KHATER is seen making his way towards TANIOS. KHATER then states, "Give me that bear shit," and reaches into the backpack on TANIOS' back. TANIOS then states, "Hold on, hold on, not yet, not yet… its still early." KHATER is then seen

emphatically telling TANIOS, "They just fucking sprayed me," and KHATER is seen holding a white can with a black top that appears to be a can of chemical spray. See Figure One, below.



*Figure One*

This verbal exchange between KHATER and TANIOS, together with KHATER's retrieval of the spray can from TANIOS, reveals that the two were working in concert and had a plan to use the toxic spray against law enforcement.

On the video, KHATER continues to talk animatedly with TANIOS. At approximately 2:20 p.m., KHATER walks through the crowd to within a few steps of the bike rack barrier. KHATER is standing directly across from a line of law enforcement officers to include U.S. Capitol Police ("USCP") Officers B. Sicknick and C. Edwards, and Metropolitan Police Department ("MPD") Officer D. Chapman, who was equipped with a functioning body worn camera ("BWC") device.

Officer Chapman's BWC shows that at 2:23 p.m., the rioters begin pulling on a bike rack to Chapman's left, using ropes and their hands to pull the rack away. Seconds later, KHATER is observed with his right arm up high in the air, appearing to be holding a canister in his right hand and aiming it in the officers' direction while moving his right arm from side to side. Officer Chapman's BWC confirms that KHATER was standing only five to eight feet away from the officers. See Figure Two, below.



*Figure Two*

    In reviewing the surveillance footage and BWC video, your affiant observes that Officers Sicknick, Edwards and Chapman, who are standing within a few feet of KHATER, all react, one by one, to something striking them in the face. The officers immediately retreat from the line, bring their hands to their faces and rush to find water to wash out their eyes, as described in further detail below and as captured in the following screen shots. See Figures Three and Four, below.



*Figure Three*



*Figure Four*

At 2:23 p.m., on the surveillance footage, KHATER is again observed raising his arm and continues to spray in the direction of law enforcement officers. MPD Lt. Bagshaw notices these actions and approaches KHATER. At 2:23 p.m., Lt. Bagshaw then sprays KHATER, as observed on both surveillance footage and Lt. Bagshaw's BWC. See Figure Five, below.



*Figure Five*

5

3. Injuries to Officers

Officers Sicknick, Edwards, and Chapman suffered injuries as a result of being sprayed in the face with an unknown substance by KHATER. The officers were temporary blinded by the substance, were temporary disabled from performing their duties and needed medical attention and assistance from fellow officers. They were initially treated with water in an effort to wash out the unknown substance from their eyes and on their face. All three officers were incapacitated and unable to perform their duties for at least 20 minutes or longer while they recovered from the spray. Officer Edwards reported lasting injuries underneath her eyes, including scabbing that remained on her face for weeks. Officers Edwards and Chapman also described the spray to their face as a substance as strong as, if not stronger than, any version of pepper spray they had been exposed to during their training as law enforcement officers. Officer Sicknick reported to his supervisors and colleagues that he had been sprayed in the face with a substance.

4. Identification of the Defendants

Based on the above surveillance footage, law enforcement prepared flyers with photographs of KHATER and TANIOS, which were published along with other individuals involved in the violence at the U.S. Capitol on January 6, 2021. Defendant KHATER was listed as subject number 190. Defendant TANIOS was listed as subject number 254. A tipster to the FBI provided information that TANIOS and KHATER knew each other and grew up together in New Jersey.

<u>Identification of JULIAN KHATER</u>

During the investigation, law enforcement received information from a tipster regarding subject 190. The tipster relayed that the subject was the same person who owned a Linkedin page belonging to JULIAN KHATER.

Based on a review of this Linkedin page, law enforcement identified and spoke by telephone to W-1. W-1 stated IT was a former work colleague of KHATER. Your affiant provided W-1 an image of subject 190, and W-1 positively identified the individual as "Julian" and stated IT was "100% sure" the individual was "Julian," whom IT knew from working together at a food establishment in State College, Pennsylvania. W-1 saw KHATER approximately three to four times per week from July 2019 to November 2019, and last saw KHATER in November 2019. W-1 did not immediately remember KHATER's last name, but looked up an old work document that listed Julian's last name as KHATER.

<u>Identification of GEORGE TANIOS</u>

During the investigation, law enforcement received two tips that included a photo posted on social media of TANIOS at the Capitol on January 6, 2021. See Figure Six, below.

6



*Figure Six*

The tipsters stated that the photo was from a Facebook page belonging to an individual named "GEORGE PIERRE TANIOS" and confirmed that TANIOS was wearing clothing with the insignia of "Sandwich University" in both his profile picture and his picture at the Capitol. Your affiant notes that the hooded sweatshirt that TANIOS is wearing in the Capitol picture appears identical to the sweatshirt worn by TANIOS in the surveillance video, as seen below in Figure Seven:



*Figure Seven*

Another tipster reported to law enforcement that BOLO 254 looked "very close" to George Pierre Tanios from New Jersey, and that TANIOS had bragged about going to the insurrection at the Capitol on Facebook. The tipster also indicated that TANIOS owns the "Fat Sandwich" restaurant.

7

Utilizing a public records database, law enforcement located a GEORGE PIERRE TANIOS, born in New Brunswick, NJ, and found the below photograph (Figure Eight) of TANIOS at his business in Morgantown, West Virginia.



*Figure Eight*

TANIOS is wearing a shirt with a Sandwich University logo identical to the clothing seen in both his social media post and the Capitol surveillance footage. A search of social media also revealed a profile of an individual named "George Pierre Tanios," with the username "kingofthefatsandwich."

Law enforcement interviewed W-2 and provided two images of TANIOS for W-2 to review. Upon viewing the two images of TANIOS, W-2 positively identified the individual in the photos as TANIOS. W-2 stated that IT was "100%" sure the individual in one photo was TANIOS, and "pretty sure" the individual in the second photo was TANIOS. W-2 has known TANIOS for 15 years, and they are former business partners. W-2 reported that IT was in a legal dispute with TANIOS where TANIOS reportedly embezzled $435,000 from their former business.

5. Charges

Based on the foregoing, your affiant submits that there is probable cause to believe that KHATER AND TANIOS violated 18 U.S.C. §§ 111(a) and (b), which makes it a crime to, with a deadly or dangerous weapon, assault, resist, oppose, impede, intimidate, or interfere a Federal law enforcement officer, as designated in Section 1114 of Title 18, while engaged in or on account of the performance of official duties. For purposes of Section 1114 of Title 18, an officer or employee includes any person assisting such an officer or employee in the performance of such duties or on account of that assistance.

Your affiant submits there is probable cause to believe KHATER and TANIOS violated 18 U.S.C. § 372, which makes it a crime to conspire to injure or impede an officer of the United States on account of his or her lawful discharge of the duties of his or her office.

8

Your affiant submits there is probable cause to believe that KHATER and TANIOS violated 18 U.S.C. § 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his or her official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

Your affiant submits there is probable cause to believe that KHATER AND TANIOS violated 18 U.S.C. § 1511(c)(2), which makes it a crime to obstruct, influence, or impede any official proceeding.  The Joint Session of Congress where the Senate and House count Electoral College votes is an official proceeding.

Your affiant submits there is probable cause to believe that KHATER AND TANIOS violated 18 U.S.C. § 1752(a)(2), which makes it a crime to knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; and § 1752(a)(4), which makes it a crime to knowingly engage in any act of physical violence against any person or property in any restricted building or grounds; or attempts or conspires to do so; and § 1752(b)(1), which makes it a crime to violate § 1752(a) while using a deadly or dangerous weapon, or while causing significant bodily injury.  For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that KHATER AND TANIOS violated 40 U.S.C. § 5104(e)(2)(F), which makes it a crime to willfully and knowingly engage in an act of physical violence in the Grounds or any of the Capitol Buildings.

Your affiant submits there is also probable cause to believe that KHATER AND TANIOS violated 18 U.S.C. § 2, which makes it a crime to aid, abet, counsel, command, induce or procure another criminal offense or to willfully cause the act to be done.

      Your affiant believes probable cause exists to issue an arrest warrants for JULIAN ELIE KHATER and GEORGE PIERRE TANIOS for the above listed violations.

_____
SPECIAL AGENT RILEY PALMERTREE
FEDERAL BUREAU OF INVESTIGATION

*Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 6$^{TH}$day of March, 2021.*

Zia M. Faruqui
2021.03.06 16:23:38
-05'00'

_____
U.S. MAGISTRATE JUDGE