IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        Plaintiff,

V.                                                  CRIMINAL NO. 1:21-CR-222

GEORGE PIERRE TANIOS,

        Defendant.

**REPLY TO THE GOVERNMENT'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTION FOR RELEASE FROM CUSTODY**

## I.    INTRODUCTION

Mr. Tanios wishes to respond to the arguments raised and suggested in the Government's Omnibus Opposition, ECF 21, and stated by counsel at the detention hearing on April 27, 2021, before this Court. As we have established through the testimony of multiple witnesses, Mr. Tanios is a father of three who runs a small business in Morgantown, West Virginia. He has no history of violence. He is not a member of any militia, hate group, or organization espousing violence or civil unrest. On January 6, 2021, Mr. Tanios did not plan to do harm to others, he did not conspire to assault anyone, and he did not travel to Washington, D.C., with the intention of participating in a violent protest. Rather, Mr. Tanios was present at the U.S. Capitol, but he was not involved in criminal activity himself, as a co-conspirator or as an aider and abettor. Without a doubt, he is not guilty of the allegations against him. As discussed below, he should be released from detention pending trial.

## II.  ARGUMENT

**A.  Mr. Tanios did not "attack the United States Capitol" on January 6, 2021.**

Mr. Tanios objects to the Government's argument that he attacked the United States Capitol.  *See* Government's Omnibus Opposition, ECF 21, at 1-3.  This argument appears throughout the Government's submission and it was mentioned during oral argument on April 27, 2021.  This is a complete mischaracterization of the evidence.  Mr. Tanios did not participate in the riot.  Mr. Tanios did not breach the Capitol Building.  Mr. Tanios did not tear down barriers.  Mr. Tanios is not a member of a militia or hate group, and he is not affiliated with any group that had a plan to attack or do damage to the U.S. Capitol, much less to do harm to the members of Congress and staff inside.

Mr. Tanios did not conspire or coordinate with Mr. Khater or anyone else to storm the Capitol or harm anyone inside.  Mr. Tanios was present on the grounds of the U.S. Capitol on January 6, 2021.  Today, he wishes he had not been present because he never expected to witness the chaos, unrest and violence that took place.  Mr. Tanios did not predict that anyone would rush past officers and violently enter the Capitol Building that day and he certainly had no plan to partake in that activity.  Without presenting any compelling evidence -- or even a single witness -- the Government improperly attempts to reclassify Mr. Tanios as a violent protester so that it can persuade this Court to grant its motion for detention pending trial.  This is inaccurate and irresponsible.

**B.  Mr. Tanios did not assault federal officers, and he did not conspire, assist, or aid and abet Mr. Khater or anyone else in an assault on federal officers.**

Mr. Tanios is politically minded.  He traveled to Washington, DC, on January 5, 2021, to attend a rally and support a political party, not fight with police officers, which is something he has never done before.  Mr. Tanios has established through witness testimony that he is an

ordinary family man who runs a sandwich shop in a small college town in West Virginia. Mr. Tanios has no reputation for violence, and he has never been charged with a crime of violence. He does not run the streets, fight, or cause problems for anyone because he is either working in his small sandwich business or caring for his three small children at home.

What's more, according to the testimony of Shawn Ruth, an educator and retired member of the West Virginia National Guard, who nearly went to the Capitol with Mr. Tanios, there was no prior discussion about doing any harm to anyone in Washington, DC. Mr. Tanios planned a trip to a major political rally to express opinions, cheer for President Trump, and spend time with like-minded supporters. We recognize that this, standing alone, may seem very distasteful to many people, particularly in retrospect, but it is a far cry from a federal crime.

At the Capitol, Mr. Tanios did not hit, kick or harm anyone. He possessed chemical spray in his backpack. The chemical sprays were purchased lawfully, for noncriminal reasons, as further discussed below. Yet, he never used the sprays on anyone that day. After the riot erupted, there was a conversation between Mr. Tanios and Mr. Khater about using the spray, as captured by what has been referred to as the "Convo Couch video" presented as Government Exhibit 5.

However, during this conversation Mr. Tanios denied Mr. Khater access to the chemical spray in his backpack. The Government claims it can only hear parts of the conversation that tend to incriminate Mr. Tanios and – as the argument goes -- suggest there was a plan to use the sprays at a point later in time during coordinated assault. This is a fantasy. When this Court listens to the entire conversation on the Convo Couch video, it is entirely clear that Mr. Tanios told Mr. Khater he was *not* handing over any spray, Mr. Khater could *not* have any spray, and that Mr. Tanios did *not* agree with the use of any spray on Capitol grounds. Specifically, after

Mr. Khater seemed to ask for "that bear shit" Mr. Tanios states "nah" and "don't do it." This is an unequivocal denial. A careful review of this video undercuts the Government's wild theory that Mr. Khater and Mr. Tanios were "working in concert and had a plan to use the toxic spray against law enforcement." Government's Omnibus Opposition, ECF 21, at 6.

The Government argues that after this exchange, Mr. Khater left Mr. Tanios and walked through the crowd within a few steps of the bike rack barrier and, thereafter, "Mr. Khater began his attack." *Id.* Mr. Tanios does not take a position on whether this occurred *because Mr. Tanios was not there*. Mr. Tanios's absence at the location of the alleged assault is the best evidence that there was no conspiracy. Mr. Tanios possessed spray, yet he did not approach the bike rack with Mr. Khater. Mr. Tanios did not brandish the spray, and he certainly did not use the spray during this alleged attack.

The circumstances in this case are very telling. Anyone with experience handling crimes of violence can see that this was not a coordinated attack. Typically, when two people seek to do harm, they move together, they brandish weapons together and strike together. This event, on the other hand, entirely lacks those characteristics of an organized assault by two men. Indeed, the evidence shows, there was no conspiracy, no plan, and no coordination between Mr. Tanios and Mr. Khater to assault law enforcement officers.

**C. Injuries to Officers should not be attributed to Mr. Tanios.**

Mr. Tanios does not dispute that numerous officers were injured at the U.S. Capitol on January 6, 2021. Government's Omnibus Opposition, ECF 21, at 11. The violent events of that day were shocking and tragic in many ways. Yet, Mr. Tanios takes no position on the alleged injuries Officers Sicknick, Edwards, and Chapman suffered to their eyes as a result of a spray used by Mr. Khater. Mr. Tanios was not present at the line of bike racks when this incident

4

allegedly occurred, Mr. Tanios did not witness the alleged incident, and he did not learn anything about it until after the event.

Furthermore, the Government has produced no evidence of these alleged injuries, other than a handful of short video clips showing the mechanism of injury and reaction, according to the interpretation of one of the lawyers for the Government. Under the circumstances, Mr. Tanios is not responsible for any injuries to these officers and the injuries should not be attributed to him without the presentation of medical records and actual testimony by witnesses with at least some knowledge of the events of January 6, 2021. Over the course of two detention hearings, the Government has not offered a single witness, but it has the audacity to claim Mr. Tanios is a danger to the community based upon clear and convincing evidenced. This Court should require more before seriously considering a motion to detain an otherwise law-abiding and peaceful man.

**D. The evidence recovered during the arrest of Mr. Tanios is not relevant to what occurred at the U.S. Capitol on January 6, 2021.**

The Government seems to indicate that the arrest of Mr. Tanios and the execution of a search warrant on his home demonstrate that he is a danger to the community. Government's Omnibus Opposition, ECF 21, at 11-12. In reality, the circumstances surrounding the arrest of Mr. Tanios on March 14, 2021, indicate that he is not a flight risk and not a danger to the community. Suffice to say, law enforcement officers took Mr. Tanios and his family by surprise, at 9:30 pm, as they were putting their children to bed at their home in Morgantown, West Virginia. Mr. Tanios and his family fully cooperated with law enforcement officers as they executed a search warrant. He did not flee. He did not obstruct justice. He did not resist, and he did not fight with officers. Mr. Tanios is not asking for a gold star for this behavior, but this Court knows that if any of those things happened, then the evidence of the incident would be

rerun by the Government and blown up larger than life in a PowerPoint presentation in Court. Naturally, the absence of any misconduct at the time of arrest and during the execution of the search warrant illustrates that Mr. Tanios is a cooperative, non-violent person who does not seek to harm law enforcement officers and who is not a danger to the community.

    **E. The comments of U.S. Magistrate Judge Aloi about Mr. Tanios are inaccurate and not at all relevant to the proceedings in this Court.**

United States Magistrate Judge Aloi is a fine judicial officer in the Northern District of West Virginia. Still, as indicated in our motion to review the detention order, he did not make the correct decision about detention in this case. Clearly, given the number of pages dedicated to Magistrate Judge Aloi in the Government's Omnibus Opposition, the Government is drawn to his comments made on the record near the conclusion of the detention hearing. Government's Omnibus Opposition, ECF 21, at 13-14, 19, & 21-22.

Our position is that many of Magistrate Judge Michael John Aloi's comments seemed biased, gratuitous, and inaccurate. The context may be significant. Based on information and belief, Magistrate Judge Aloi's cousin, U.S. Senator Joe Manchin, was inside the U.S. Capitol on January 6, 2021. We fully appreciate the negative feelings that anyone would experience if a close family member is in danger. However, we disagree with the need to present a monologue in federal court at the end of a detention hearing. It is at the very least arguable that Magistrate Judge Aloi's monologue was comprised of thinly veiled personal opinions. In any case, we certainly disagree with the notion embraced by the Government that the comments of Magistrate Judge Aloi are authoritative. A court speaks through its orders and the lawyers for the Government should know this. Accordingly, the comments of U.S. Magistrate Judge Aloi at the original detention hearing should be disregarded by this Court, particularly since the standard of review is *de novo*.

### F. The nature and circumstances of the offense do not support detention.

Mr. Tanios is not a danger based upon the six "guideposts" articulated in *United States v. Chrestman*, No. 21-mj-218 (ZMF), 2021 WL 765662 (D.D.C. Feb. 26, 2021), for assessing the comparative culpability of a given defendant in relation to others on January 6, 2021. The guideposts are as follows: (1) whether the defendant has been charged with felony or misdemeanor offenses; (2) the extent of the defendant's prior planning, "for example, by obtaining weapons or tactical gear"; (3) whether the defendant used or carried a dangerous weapon; (4) evidence of coordination with other protestors before, during, or after the riot; (5) whether the defendant played a leadership role in the events of January 6, 2021; and (6) the defendant's "words and movements during the riot"—e.g., whether the defendant "remained only on the grounds surrounding the Capitol" or stormed into the Capitol interior, or whether the defendant "injured, attempted to injure, or threatened to injure others." *Id.* at 7-8.

**(1) Whether the defendant has been charged with felony or misdemeanor offenses.**

Mr. Tanios has been charged with felonies. This is the first time he has been accused of a crime of violence and, without question, he is presumed to be innocent of all charges. Nothing in the Bail Reform Act "shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j).

**(2) The extent of the defendant's prior planning.**

Mr. Tanios did not plan to engage in a riot or commit violence against law enforcement officers. Unlike the Government, Mr. Tanios presented witness testimony on this point, including the testimony of Shawn Ruth, an educator and retired military veteran, who was deployed multiple time, and who nearly attended the event with Mr. Tanios. During their

discussions Mr. Tanios made no reference to a plan to injure law enforcement officers, do damage to the Capitol itself, or harm anyone inside.

### (3)    Whether the defendant used or carried a dangerous weapon.

There is no dispute that Mr. Tanios purchased four containers of non-lethal chemical spray.  *We proffer* that Mr. Tanios purchased these items on his own.  At the detention hearing on April 27, 2021, the Government mocked Mr. Tanios for his possession of chemical spray, including two canisters of so-called bear spray.  There are many bears in West Virginia, but the Government is correct that no bear live inside the beltway, as far as we know.  This Court should understand that Mr. Tanios was not afraid of bears in DC.  Rather, *we proffer* that prior to January 6, 2021, Mr. Tanios was acutely aware that Trump supporters had been violently attacked in connection with similar political events by members of other groups opposing President Trump and the Republican Party.  This was well documented and commonly known.[1]

Mr. Tanios made a lawful purchase of these containers at a self-defense and recreational all-terrain vehicle store in Morgantown.  *We proffer* that Mr. Tanios knows the staff at the store and they know him.  We interviewed the salesman who advised that nothing unusual happened during the purchase and nothing sinister appeared to be going on.  Mr. Tanios purchased the items under his own name, and he used his credit card.  Mr. Tanios even inquired whether it would be legal to carry the sprays to DC during the upcoming rally.  *We proffer* that Mr. Tanios had these items for self-defense, in case he or his companions were attacked prior to, during, or

---

[1] A quick Google search generates multiple news articles about attacks on Trump supporters.  Many of these articles were published prior to January 5, 2021.  A quick search of YouTube generates many videos of people hitting, assaulting and harassing Trump supporters during events in DC and elsewhere.  Moreover, on May 6, 2021, the Government prevailed at trial in federal court in the Northern District of Florida, in a case involving a defendant who recruited others to encircle Trump supporters and attack them after leaving a rally in Tallahassee.  *See* Florida man convicted in plot to attack pro-Trump protesters, available at https://federalnewsnetwork.com/government-news/2021/05/florida-man-convicted-in-plot-to-attack-pro-trump-protesters/.  The Government knows Trump supporters face real threats in public and it is no surprise they will carry weapons for self-defense.

-
-
-
-
-

after the rally, by anyone opposed to Trump supporters.  *We proffer* that bear spray, specifically, has a long reach and is effective for use against a group of attackers, which was a fear Mr. Tanios had based upon reports of mob attacks upon Trump supporters.  *We proffer* that Mr. Tanios had a legitimate fear and that he possessed chemical sprays for a legitimate purpose, namely, to stay safe before, during, and after the rally.

**(4)     Evidence of coordination with others before, during, or after the event.**

Mr. Tanios discussed the idea of attending the rally with Mr. Khater and Shawn Ruth.  They did not plan any violence, prior to the event.  Mr. Tanios rode with Mr. Khater to the rally, but at no time did they discuss harming anyone at the Capitol.  Mr. Tanios had no intention of harming anyone during the rally or the protest at the U.S. Capitol.  At the Capitol, when there was a conversation about brandishing bear spray, Mr. Tanios denied access to Mr. Khater and did not relinquish any of the canisters of spray in his possession while on Capitol grounds.  Mr. Tanios did not work with Mr. Khater to harm anyone, he did not witness this happening – if it did -- and he did not even know that Mr. Khater was suspected of spraying officers until after the event.

**(5)     Whether the defendant played a leadership role in the events of January 6.**

Mr. Tanios did not have a leadership role.  He is not a member of a militia or hate group.  He is not a member of any organization that encourages or supports violence against the Government or law enforcement.  He had an iPhone and, as this Court has noted, a Bluetooth earpiece, but he was not using his iPhone or earpiece to give orders to anyone.  He used it to access social media and to speak with Mr. Khater on the phone, so they could locate one another after they separated.

> **(6)** The defendant's "words and movements during the riot"—e.g., whether the defendant "remained only on the grounds surrounding the Capitol" or stormed into the Capitol interior, or whether the defendant "injured, attempted to injure, or threatened to injure others."

As discussed above, Mr. Tanios did not go to the Capitol to fight or destroy the Capitol and he did not do so. He remained on the grounds in a crowd of people. There was chaos, and, in retrospect, Mr. Tanios should have left once people in the crowed began to clash with law enforcement. In the midst of this emotionally charged environment and apparently after being sprayed himself, Mr. Khater had a conversation with Mr. Tanios about removing the chemical spray canisters from his backpack. Mr. Tanios declined to do so and his refusal is captured by the Convo Couch video. *See* Government Exhibit 5.

The Government cobbles together portions of this conversation to manufacture an argument that Mr. Tanios and Mr. Khater planned to use the spray later, in an ultra-coordinated attack with others against the line of officers protecting the Capitol. Government's Omnibus Opposition, ECF 21, at 5, 18-19. Mr. Tanios was a soldier, the argument goes, in a mob of people working together to storm the Capitol. This is pure fiction. There is no evidence to support this storyline. It is not accurate, and the Government has not even come close to proving this ambitious theory by clear and convincing evidence. The federal prosecutors can say something over and over, but that does not make it true.

**G. The weight of the evidence does not support detention.**

The weight of the evidence is not strong. The Government's evidence against Mr. Tanios is: (1) testimony from a salesperson who will testify that he sold canisters of chemical spray to Mr. Tanios; (2) a video capturing a conversation between Mr. Tanios and Mr. Khater discussing bear spray and an alleged reference to it being too early to use the spray; and (3) the recovery of evidence during the execution of a search warrant at his home, including three canisters of

chemical spray, a backpack, and clothing he wore at the rally.  Government's Omnibus Opposition, ECF 21, at 20.

This evidence is not incriminating.  The salesperson at the store in West Virginia has already been interviewed by our law office and he states there was nothing suspicious about the interaction with Mr. Tanios at all.  If he had noticed anything suspicious, he would have reported it immediately.  The Covo Couch video, as explained above, shows a lack of intent by Mr. Tanios to use the chemical sprays at the Capitol.  In fact, he never used the canisters he possessed and he never agreed to provide spray to Mr. Khater for use at the Capitol against law enforcement officers – if this happed at all.  The canisters recovered at the home of Mr. Tanios were never used, and we urge the Government to test them and measure the contents.  Indeed, had Mr. Tanios been a violent member of a mob and a willing participant in a riot, he would have been running around spraying people himself.  He never did because that was not the reason for his travel to Washington, DC.

**H. The history and characteristics of Mr. Tanios do not support detention.**

The Government barely acknowledges Mr. Tanios's personal history, characteristics, and lifestyle, which completely undercut the claim that detention is necessary.  Government's Omnibus Opposition, ECF 21, at 21.  The Government is willing to admit that Mr. Tanios has never been convicted of a felony, but there so much more relevant evidence established by multiple witnesses who know him well.  Mr. Tanios has never previously been accused of violence.  Mr. Tanios does not have a reputation for violence.  Mr. Tanios is a dedicated, loving, supportive, and family-oriented husband and father.  For fifteen years, Mr. Tanios created, owned and operated several businesses in Morgantown, West Virginia, which served the community, bolstered the local economy, employed many people, and created revenue for the

City of Morgantown. Mr. Tanios is not a member of any extremist organization, militia, hate group, or any other organization that supports violence, chaos, anarchy, or civil unrest.

The Government argues that Mr. Tanios is a reckless man who decided to "gamble" with his family and community ties, believing "that either [he] would not get caught, or a court would release [him] because of these family and community ties." *Id.* This is not a serious argument. Mr. Tanios purchased canasters of chemical spray under his own name, in a store where he was known and then wore a sweatshirt with the name and logo of his sandwich shop to a rally in DC. This is not how anyone would prepare to commit a notorious crime of violence, especially in the shadow of a pole camera, and probably surrounded by one hundred other cameras on Capitol grounds. As for getting released, as he should, that is not the end of this case. He still must face jury and, as the Government knows, his family and community ties will not be relevant evidence about guilt or innocence at trial.

Finally, faced with a defendant who has a remarkable prior history of being non-violent, loved by his friends and family, and respected in the local business community, the Government reverts to quoting Magistrate Judge Aloi's monologue at the conclusion of the detention hearing. *Id.* These statements have no force of law because, as stated above, a court speaks through its orders. The only relevant contribution made by Judge Aloi is the Detention Oder, to which we have objected. Since the review is *de novo*, and this Court has held its own detention hearing, even the Detention Order lacks substantial precedential value at this point. References to Judge Aloi are not helpful and strongly suggest that the Government has nothing more worthwhile to argue.

### III.     CONCLUSION

Mr. Tanios has no history of violence and has never been previously accused of being a danger to others.  He has never been convicted of a felony.  Mr. Tanios lives in a modest townhome in Morgantown, West Virginia, with his fiancé and their three small children.  There are no firearms in the home.  He has no history of non-appearance.  He has no history of tampering with witnesses.  He works 80 hours a week at a restaurant he operates and then comes home to help care for his children.  His lifestyle and ordinary environment almost guarantee that no other person will be harmed by Mr. Tanios upon release.  What's more, this Court can place Mr. Tanios on home detention, with any combination of additional conditions, which, in essence, creates a jail for him at his home, except while working or meeting with counsel to prepare for trial.  Therefore, this Court should overrule the Detention Order and release Mr. Tanios to his home in Morgantown, West Virginia, while awaiting trial.

Respectfully submitted,

**GEORGE PIERRE TANIOS**

By:   /s/ Elizabeth B. Gross
WV State Bar No. 11567
Federal Public Defender Office
230 West Pike Street, Suite 360
Clarksburg, West Virginia 26302
Tel. (304) 622-3823
E-Mail: Beth_gross@fd.org

s/ L. Richard Walker
WV State Bar No. 9580
230 West Pike Street, Suite 360
Clarksburg, WV 26302
Tel. (304) 622-3823
E-Mail: Richard_walker@fd.org

**CERTIFICATION OF SERVICE**

I certify that on May 7, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia. A copy will be sent via email to the following:

**Anthony F. Scarpelli, Esq.**
**U.S. ATTORNEY'S OFFICE**
**555 Fourth Street, NW**
**Washington, DC 20530**
**(202) 252-7707**
**Fax: (202) 514-8707**
**Email: anthony.scarpelli@usdoj.gov**

**Gilead I. Light, Esq.**
**U.S. ATTORNEY'S OFFICE**
**555 4th Street NW**
**Ste 4832**
**Washington, DC 20816**
**202-252-6880**
**Email: gilead.light@usdoj.gov**

By:  /s/ Elizabeth B. Gross
Elizabeth B. Gross
WV State Bar No. 11567
Federal Public Defender Office
230 West Pike Street, Suite 360
Clarksburg, West Virginia 26302
Tel. (304) 622-3823
Fax. (304) 622-4631
E-Mail: Beth_gross@fd.org