**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**V.**                                                      **CASE NO. 1:21-CR-222 (TFH)**

**GEORGE PIERRE TANIOS,**

    **Defendant.**

**MOTION TO DISMISS COUNT SIX OF THE INDICTMENT**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

The Defendant, George Pierre Tanios, by and through counsel, respectfully moves this Court to dismiss Count Six of the Indictment, "Obstructing or Impeding Any Official Proceeding, in violation of Title 18, United States Code, Sections 1512(c)(2)," for failure to state an offense. In support of the motion, Mr. Tanios sets forth the following facts and argument.[1]

## I. INTRODUCTION

Count Six of the Indictment charges Mr. Tanios and co-defendant Julian Khater with a violation of 18 U.S.C. § 1512(c)(2). In full, Count Six states as follows:

> On or about January 6, 2021, within the District of Columbia and elsewhere, **JULIAN ELIE KHATER** and **GEORGE PIERRE TANIOS**, attempted to, and did, corruptly obstruct, influence, and impeded an official proceeding, that is, a proceeding before Congress, by committing an act of civil disorder, and engaging in disorderly and disruptive conduct.
>
> (**Obstructing or Impeding Any Official Proceeding**, in violation of Title 18, United States Code, Sections 1512(c)(2)).

---

[1] The same or similar arguments have been presented in other cases concerning the events of January 6. For example, undersigned is aware of similar motions pending in the following matters, all before the district judges in the District of Columbia, *United States v. Riley Williams*, 1:21-cr-618-ABJ; *United States v. Grider,* 1:21- cr-22-CKK; *United States v. Caldwell and Crowl*, 1:21-cr-28-APM; *United States v. Reffitt,* 1:21-cr-32-DLF; *United States v. Montgomery and Knowlton*, 1:21-cr-46-RDM; *United States v. Sandlin,* 1:21-cr-88-DLF; *United States v. Andries*, 1:21-cr-93; *United States v. Cua*, 1:21-cr- 107-RDM; *United States v. Miller*, 1:21-cr-119-TJN; *United States v. Mostofsky,* 1:21-cr-138-JEB; *United States v. Nordean and Biggs*, 1:21-cr-175-TJK; *United States v. Costianes*, 1:21-cr-180-RJL; *United States v. Blair*, 1:21-cr-186-CRC; *United States v. Puma*, 1:21-cr-454-PLF. This motion liberally quotes from a number of those similar motions in the above-stated cases.

[ECF No. 8 at 5] (emphasis in the original). Mr. Tanios contends that the allegation in Count Six for the felony offense of what the Indictment labels "Obstruction or Impeding an Official Proceeding, in violation of Title 18, United States Code, Sections 1512(c)(2)" is erroneously charged.  Indeed, § 1512 titles the offense as "Tampering with a witness, victim, or an informant." Moreover, as shown by its plain language, § 1512(c) falls under Chapter 73 of Title 18, which deals with "Obstruction of Justice." *See generally*, 18 U.S.C. §§ 1501-1521.

In considering the plain language of this statute, at least one Circuit has recognized that an offense under § 1512(c) does not prohibit the obstruction of every governmental function. *See United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013), *as amended* (Aug. 28, 2013). Rather, § 1512(c) only prohibits the obstruction of proceedings such as a hearing that takes place before a tribunal. *See id*. at 1172 (finding that § 1512, "when describing an official proceeding strongly implies that some formal hearing before a tribunal is contemplated"). By its plain language, § 1512(c) does not criminalize the obstruction of all action by Congress. The alleged obstruction of a proceeding before Congress on January 6, 2021, falls outside the scope of § 1512(c).

What is more, Mr. Tanios contends that Count Six of the Indictment in his case fails to specify what "official proceeding" or "proceeding before Congress" he "attempted to, and did, corruptly obstruct, influence, and impede[ ]" on January 6, 2021. *See* [ECF No. 8 at 5]. Whereas other January 6th Indictments charging violations of § 1512(c) appear to state "specifically, Congress's certification of the Electoral College vote," *see*, e.g., ECF NO. 33, Case No. 1:21-CR-00618, Count Six of Mr. Tanois's Indictment does not. As such, Count Six is overly vague and fails to state an offense. In the alternative, on its face § 1512 is constitutionally infirm because of its inherent vagueness and arbitrary enforcement across the spectrum of January 6th cases.

## II. STANDARD OF REVIEW

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment "must provide the defendant sufficient detail to allow [a defendant] to prepare a defense, to defend against a subsequent prosecution of the same offense, and to ensure that [the defendant] be prosecuted upon facts presented to the grand jury." *United States v. Apodaca*, 275 F. Supp. 3d 123, 153 (D.D.C. 2017) (citing *Russell v. United States*, 369 U.S. 749 (1962), and *Stirone v. United States*, 361 U.S. 212 (1960)). A defendant "may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B). Rule 12 provides that a defendant may also move to dismiss the indictment for "failure to state an offense" and "lack of specificity." Fed. R. Crim. P. 12(b)(3)(B)(iii), (v). In considering a Rule 12 motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true." *United States v. Syring*, 522 F. Supp. 2d 125, 128 (D.D.C. 2007); *United States v. Sampson*, 371 U.S. 75, 78 (1962). Accordingly, "the Court cannot consider facts beyond the four corners of the indictment." *United States v. Ring*, 628 F. Supp. 2d 195, 204 (D.D.C. 2009) (internal quotations omitted).

A criminal statute is unconstitutionally vague if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *United States v. Bronstein,* 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)). "The touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259 (1997). The void-for-vagueness doctrine protects against arbitrary or discriminatory law enforcement. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (citing *Kolender v. Lawson,* 461 U.S. 352, 358 (1983).

# III. DISCUSSION

**A.** **Count Six of the Indictment is insufficient because it fails to state an offense nor even specify what "proceeding before Congress" Mr. Tanios allegedly obstructed.**

Count Six of the Indictment charges that Mr. Tanios obstructed an "official proceeding," in violation of 18 U.S.C. § 1512(c)(2) and it identifies that "proceeding" only as "a proceeding before Congress." [ECF No. 8 at 5]. Count Six, thus, fails to specify what type of "proceeding before Congress" Mr. Tanios allegedly obstructed. Because Count Six fails to provide notice of what kind of proceeding was allegedly obstructed, it is insufficient. *See Russell v. United States*, 369 U.S. 749, 763 (1962) (finding of "the protections which an indictment is intended to guarantee" is "first, whether the indictment 'contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet"). To be certain, such detail is necessary because "the very core of the criminality" § 1512(c)(2) proscribes depends so crucially upon such "a specific identification of fact," *i.e.*, what the "proceeding" was that Mr. Tanios allegedly obstructed or impeded. *See id.* at 764. Without more information in the Indictment on the type of proceeding, Count Six fails to specify the "official proceeding" and, more specifically, the "proceeding before Congress" that Mr. Tanios allegedly obstructed. Indeed, § 1512(c)(2) does ***not*** proscribe the obstruction of any and all proceedings before Congress. Count Six of the Indictment is constitutionally insufficient and must be dismissed.

Nevertheless, if this Court were to find that Count Six somehow provided sufficient notification about the "proceeding before Congress" to contain the essential element of the offense charged and to sufficiently allow Mr. Tanios to prepare a defense, it should still be dismissed for failure to state an offense. As detailed in the subsections below, the proceeding before Congress—presumably, the Electoral College certification before Congress on January 6, 2021—does not constitute an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2).

1.      **The text of § 1512 must be construed strictly and with restraint.**

18 U.S.C. § 1512 prohibits "corruptly. . . obstruct[ing], influenc[ing], or imped[ing] any

*official proceeding*, or attempt[ing] to do so." *Id.* (emphasis added). 18 U.S.C. § 1515(a)(1) defines

an "official proceeding" as:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) a proceeding before the Congress;
>
> (C) a proceeding before a Federal Government agency which is authorized by law;
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

18 U.S.C. § 1515(a)(1). Count Six of the Indictment against Mr. Tanios concerns "a proceeding

before the Congress" as set forth in §1515(a)(1)(B). To determine the legislative intent of a law,

courts "begin with the text of the statute." *Am. Fed'n of Gov't Emps., AFL-CIO, Local 3669 v.

Shinseki*, 709 F.3d 29, 33 (D.C. Cir. 2013). "It is elementary that the meaning of a statute must, in

the first instance, be sought in the language in which the act is framed, and if that is plain . . . the

sole function of the courts is to enforce it according to its terms." *United States v. Hite*, 769 F.3d

1154, 1160 (D.C. Cir. 2014) (internal quotations and citations omitted)). "The search for the

meaning of the statute must also include an examination of the statute's context and history." *Hite*,

769 F.3d at 1160 (citing *Bailey v. United States*, 516 U.S. 137, 144-45 (1995)). What is more, "due

process bars courts from applying a novel construction of a criminal statute to conduct that neither

the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States

v. Lanier*, 520 U.S. 259, 266 (1997).

In conjunction with the above principles of statutory construction, the Supreme Court has further instructed that courts should "traditionally exercise[ ] restraint in assessing the reach of a federal criminal statute." *Arthur Andersen LLP v. United States*, 544 U.S. 696, 703 (2005). The reasoning here is two-fold. First, the exercise of restraint is important "out of deference to the prerogatives of Congress." *Id*. (citing *Dowling v. United States*, 473 U.S. 207). Second, the exercise of restraint is needed "out of concern that 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.'" *Id*. (quoting *McBoyle v. United States*, 283 U.S. 25, 27) (strictly construing §1512(b)(2)'s broadly worded language in finding that jury instructions failed to instruct that knowledge of wrongdoing and proof of a nexus between the alleged obstruction and an official proceeding were required elements of the offense). Strictly construing § 1512(c)(2) with restraint shows that § 1512(c), obstruction of "official proceedings," does not apply to Electoral College certifications.[2]

## 2.      "Official proceeding" under § 1512(c) concerns the administration of justice.

*Ermoian* was one of the first appellate decisions to consider the meaning of "official proceeding" as that term is used in §1512(c) and defined in §1515. *See Ermoian*, 752 F.3d at 1168 ("Our circuit has never before addressed the meaning of the term 'official proceeding' as used in the obstruction of justice statute at 18 U.S.C. § 1512"). The *Ermoian* court, tasked with deciding whether a criminal investigation by the FBI was considered an "official proceeding" for purposes of §1512(c), noted that "the definition of the phrase 'official proceeding' depends heavily on the meaning of the word 'proceeding.'" *Id*. at 1169.

---

[2] Congress counts the electoral votes pursuant to the Twelfth Amendment to the United States Constitution and the Electoral Count Act of 1887, later codified in 3 U.S.C. § 15. Congress counts the electoral votes after the states have already heard any disputes and certified the vote. *See Bush v. Gore*, 531 U.S. 98, 154 (2000) (Breyer, J., dissenting). Members of Congress may make an objection, in writing, and without argument. 3 U.S.C. § 15. According to the statute, there is no testimony, no witnesses, no argument, and no evidence introduced at the electoral count. The event is merely ceremonial. *See* Stephen A. Siegel, *The Conscientious Congressman's Guide to the Electoral Count Act of 1887*, 56 FLLR 541, 585 (2004).

Reviewing the plain language of §1515, the *Ermoian* court explained that "[s]everal aspects of the definition for 'official proceeding' suggest that the legal – rather than lay – understanding of the term 'proceeding' is implicated in the statute." *Id*. at 1170. The court noted that "the descriptor 'official' indicates a sense of formality normally associated with legal proceedings," and not "a mere 'action or series of actions.'" *Id*. (citing "*Proceeding*," Oxford English Dictionary, *available at* http://www.oed.com). Moreover, the court pointed to the fact that "the word 'proceeding' is surrounded with other words that contemplate a legal usage of the term, including 'judge or court,' 'Federal grand jury,' 'Congress,' and 'Federal Government agency.'" *Id.* Further, the Ninth Circuit observed:

> Examining the term 'proceeding' within the grammatical structure of the definition at issue, it becomes clear that the term connotes some type of formal hearing. [Section 1515(a)(1)(C)] refers to proceedings "before a Federal Government agency" – a choice of phrase that would be odd if it were referring to criminal investigations. The use of the preposition "before" suggests an appearance in front of the agency *sitting as a tribunal.*

*Id.* at 1170-71 (internal citation omitted) (emphasis added); *see also United States v. Ramos*, 537 F.3d 439, 462-63 (5th Cir. 2008) ("use [of] the preposition 'before' in connection with the term 'Federal Government agency' . . . implies that an 'official proceeding involves some formal convocation of the agency in which parties are directed to appear."). The court also considered that § 1512 uses the terms "attendance, "testimony," "production" and "summon[]" when describing an official proceeding and found the use of these terms "strongly implie[d] that some formal hearing before a tribunal is contemplated." *Id.* at 1172.

The logic and reasoning used by the *Ermoian* court in considering whether an FBI investigation fell under the scope of § 1512(c) applies with equal force to interpreting the term "proceedings before the Congress," as required here. Taking § 1512 and the definitions contained in § 1515 as a whole, indicates that the statute is directed at conduct that interferes with the

administration of justice.[3] To be certain, even the title of the statute, "[t]ampering with a witness, victim, or an informant," suggests an adversarial proceeding related to the administration of justice. *See I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc.*, 502 U.S. 183, 189 (1991)("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text). A strictly construed and restrained analysis leaves little doubt that §1512 only criminalizes obstructive conduct related to a hearing before a tribunal affecting the administrative of justice. The ceremonial certification of the Electoral College votes does not qualify as an "official proceeding" under the statute.[4]

### 3. Legislative history confirms § 1512(c) concerns the administration of justice.

18 U.S.C. § 1512(c)(2) was enacted as part of the Sarbanes-Oxley Act of 2002, which was titled "Corporate Fraud Accountability," and had the express purpose of targeting "corporate malfeasance." Pub. L. No. 107-204, 116 Stat. 745. The legislative history of the Sarbanes-Oxley Act does not support the notion that Congress enacted §1512(c)(2) to criminalize the disruption of a ceremony before Congress, even with conduct like that of January 6th. Rather, the Sarbanes-Oxley Act "was prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents." *Yates v. United States*, 574 U.S. 528, 535-36 (2015).

---

[3] *See McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1039 (11th Cir. 2000)("Section 1512 . . . applies to attempts to *prevent or influence testimony* not only in federal courts but also *before Congress*, federal agencies, and insurance regulators.")(emphasis added); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (MD. Ga. 2006)(" . . . § 1515(a)(1) . . . describe[s] events that are best thought of as hearings (or something akin to hearings): for example, federal court cases, grand jury testimony, *Congressional testimony*, and insurance regulatory hearings.")(emphasis added); *United States v. Georgia*, 2014 WL 2084891 (N.D. Georgia 2014) ("official proceeding" for purposes of §1512(c) did not include a FBI investigation); *United States v. Sutherland*, 921 F.3d 421 (4th Cir. 2019) (the term "proceeding" implies 'some formal convocation . . . in which parties are directed to appear") (internal quotation omitted).

[4] This interpretation is consistent with the case law that has clarified the meaning of the statutory language at issue here. *See e.g. Arthur Anderson*, LLP, 544 U.S. at 708 (interpreting §1512(c) as requiring that the defendant have "knowledge that his actions are likely to affect [a]judicial proceeding" in order to have the "requisite intent to obstruct'); *United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013)(considering the application of §1512 and noting that "[o]bstruction of justice occurs when a defendant acts to impede the types of proceedings that take place before judges or grand juries.") *cert. denied*, 571 U.S. 888 (2014); *United States v. Sampson*, 898 F.3d 287, 300 (2d Cir. 2018)(noting that §1512 "broadly criminalizes various forms of witness tampering").

The Senate Judiciary Committee report described the Act's purpose as "provid[ing] for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations," S. REP. NO. 107-146, at 2 (2002) (emphasis added). And the Court in *Yates* narrowly construed the terms within the Act to meet that purpose, 574 U.S. at 528, like the term "tangible object," which penalized a person who:

> knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . .

18 U.S.C. § 1519. Recognizing that Congress designed the Sarbanes-Oxley Act with a "trained [ ] attention on corporate and accounting deception and cover-ups," the *Yates* Court held that the Act did not contemplate penalizing the act of tossing undersized fish (there argued to be a tangible object) overboard to avoid the consequences of an inspection by federal authorities. *Yates*, 574 U.S. at 532. Rather, in the context of the statute's purpose, a "tangible object" must be one used to record or preserve information. *Id.* Thus, while fish are tangible objects in the lay sense of that phrase, they do not qualify as tangible objects under § 1519 given the broader context of the Sarbanes-Oxley Act.

In rendering the *Yates* decision, the Supreme Court clearly telegraphed that legal terms are to be narrowly construed given the legislative history and purpose of the Sarbanes-Oxley Act. When considering the Act's preamble and legislative history, it is clear that §1512(c) was aimed at preventing corporations from destroying records relevant to a federal hearing related to the administration of justice. The legislative background of §1512(c) makes plain that it was not intended to apply in all circumstances where any government function may have been impeded, and given this context, the certification of the Electoral College votes does not qualify as an "official proceeding" under the statute.

### 4.      Other tools of statutory interpretation support the argument to dismiss.

18 U.S.C. §§ 1512 and 1515 are contained in Chapter 73 of Title 18 of the United States Code. Examining the surrounding statutory provisions in Chapter 73 further supports Mr. Tanios's interpretation of the statute at issue.[5] Several of the subsections of Chapter 73 explicitly relate to the administration of justice. *See* 18 U.S.C. §§ 1503, 1504 (Influencing or injuring a juror); §1513 (Retaliating against a witness, victim or informant); § 1521 (Retaliating against a federal judge or law enforcement officer by false claim or slander of title). There is even a statute within Chapter 73 that prohibits "picketing or parading" near the residence of a judge, juror, witness, or court officer "with the intent of interfering with, obstructing, or impeding *the administration of justice*." 18 U.S.C. § 1507 (emphasis added). All of these laws are related to the obstruction of the administration of justice. Section 1512(c) falls right within their midst.

In Mr. Tanios's case, the government has misapplied the tools of statutory interpretation. In so doing, the government has conflated an "official proceeding" under § 1512 with something more akin to a "federally protected function" under 18 U.S.C. § 231(a)(3) or even the "official business" of Congress under 40 U.S.C. § 5104(e)(2)(c). Indeed, the Court need only look to Count Five of the Indictment, in which the government charged Mr. Tanios with Civil Disorder in violation of 18 U.S.C. § 231(a)(3), to see the government uses the allegation of obstructing an "official proceeding" interchangeably with obstructing "the conduct and performance of *a federally protected function*."[6] [ECF No. 8 at 5]. Charging Mr. Tanios with obstruction under § 1512(c)(2) not only fails to state an offense; but also, it takes on the appearance of overcharging.

---

[5] *See NASDAQ Stock Mkt., LLC v. Sec. & Exch. Comm'n*, 961 F.3d 421, 426 (D.C. Cir. 2020)(quoting *Util. Air Regulatory Grp. V. E.P.A.*, 573 U.S. 302, 321 (2014))("[a] statutory provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme[,] because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.").

[6] The term "federally protected function" is defined as: any function, operation or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee

**B.**     **Alternatively, § 1512(c)(2) is unconstitutionally vague.**

Mr. Tanios equally contends that pursuant to the same principles of *United States v. Johnson*, 576 U.S. 591 (2015) and its progeny, 18 U.S.C. § 1512(c)(2) violates due process because it is vague and does not provide fair notice as to the conduct it punishes. Relevant here, § 1512(c)(2) provides that:

> Whoever *corruptly* –
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) *Otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so, . . . shall be fined . . . or imprisoned . . .

18 U.S.C. §§ 1512(c)(1) and (2). As seen above, §1512(c) uses words throughout both subsections that require courts to speculate as to their meaning in the context of the defendant's particular actions. To wit, courts must speculate as to the meaning of the word "corruptly" and the phrase "official proceeding." Even more problematic is the residual clause of subsection (c)(2), one that is so ambiguous, it requires courts to line-draw when determining if a defendant has "otherwise" obstructed, impeded, or influenced an official proceeding before Congress.

The Supreme Court in *Johnson* considered the constitutionality of residual clause of the Armed Career Criminal Act, which enhanced a defendant's sentence if the defendant had a conviction for a prior felony that "otherwise involved conduct that presented a serious potential risk of physical injury to another." *Johnson,* 576 U.S. at 591. In finding a due process violation, the Supreme Court explained that the residual clause required a "wide-ranging inquiry" in each case as to what could potentially cause injury in each set of circumstances. *Id.* at 597. Observing

---

thereof; and such term shall specifically include, but not be limited to, the collection and distribution of the United States mails." 18 U.S.C. § 232(3).

that the ambiguity of the residual clause resulted in disparate interpretations, the Supreme Court acknowledged that the "failure of persistent efforts to establish a standard can provide evidence of vagueness." *Id.* at 598. In the same way, the residual clause of § 1512(c) is constitutionally vague, requiring courts to speculate and line-draw when distinguishing "official proceedings" from mere ancillary proceedings or investigations. As discussed above, courts have generally interpreted "official proceeding" to mean something more formal than an investigation. However, without more, there is a lack of any established standard. This ambiguity is problematic both for the courts to wade through and for the people caught up in it, like Mr. Tanios.

To make matters even more troubling, the vagueness of the statute is not limited to the confusion that surrounds what constitutes an "official proceeding."  The D.C. Circuit previously acknowledged that the word "corruptly" is vague on its face as used in a similar statute, 18 U.S.C. § 1505, which prohibits obstruction of a proceeding before departments, agencies, or congressional investigations by finding "in the absence of some narrowing gloss, people must guess at its meaning and application."  *United States v. Poindexter*, 951 F.2d 369, 398 (D.C. Cir. 1991).  In *Ricks v. District of Columbia*, 414 F.2d 1097 (D.C. Cir. 1968), the court held a statute that criminalized "leading an immoral or profligate life" vague because it found "immoral" to be synonymous with "corrupt, depraved, indecent, dissolute, all of which would result in 'an almost boundless area for the individual assessment of another's behavior.'" *Poindexter*, 951 F.2d at 399 (quoting *Ricks*, 414 F.2d at 1097). The court explained that various dictionary definitions of the word "corrupt" did not reduce the confusion as to its meaning for purposes of the statute. *Id.* Based on the legislative history and judicial interpretation, the court concluded that neither of those inquiries provided defendants with the constitutionally required notice that the statute requires and found the term vague as applied to the defendant making false statements. *Id.* at 406.

12

And when the D.C. Circuit has held that the term "corruptly" was not vague as applied, it was because the facts of the case included a defendant influencing a witness, which fit squarely within the non-vague category that the *Poindexter* Court established. *See United States v. Morrison*, 98 F.3d 619, 630 (D.C. Cir. 1996). In *Morrison*, the defendant tried to influence a witness's testimony and "exhorted her to violate her legal duty to testify truthfully in court." *Id.* However, influencing another to "violate their legal duty" is not vague because "it would both take account of the context in which the term 'corruptly' appears and avoid the vagueness inherent in words like 'immorally.'" *Poindexter*, 951 F.2d at 379. Past cases did not face the question of what "corruptly" means in the context of § 1512(c) and do not resolve the ambiguity that the word presents in conjunction with the rest of that statute.

Analyzing the government's approach to charging defendants with a violation of §1512(c)(2) arising out of events on January 6, 2021, further illustrates how vague and arbitrary the enforcement of this statute can be. Arbitrary enforcement of any criminal statute is dangerous. On information and belief, it seemed initially that the government was only charging those individuals who had entered the Senate chamber[7] with a §1512(c)(2) violation. However, a snapshot of some of defendants that have been charged with a violation of § 1512(c)(2) brings the inconsistencies into greater focus.

**First**, in *United States v. Kenneth Grayson*, 21-cr-224, Mr. Grayson is alleged to have entered the Capitol building, but not the Senate chamber. Prior to January 6, 2021, he allegedly wrote in a private message, "I am there for the greatest celebration of all time after Pence leads the Senate flip! OR IM THERE IF TRUMP TELLS US TO STORM THE FUKIN CAPITOL IME DO THAT THEN!" [ECF No. 1-1, Case No. 1:21-cr-224].

---

[7] The ceremonial Electoral College certification took place in the Senate Chamber.

**Second**, in *United States v. Benjamin Larocca*, 21-cr-317, Mr. Larocca allegedly entered the Capitol building while screaming "Our House!" He was with an individual who was allegedly yelling, "You fucking oath breakers!" Mr. Larocca is not alleged to have entered the Senate floor. [ECF No. 1-1, Case No. 1:21-cr-317].

**Third**, in *United States v. Dale Jeremiah Shalvey*, 21-cr-334, Mr. Shalvey allegedly entered the Senate chamber and is captured on video rummaging through Senator Cruz's notes. He is alleged to have said "something to the effect that Ted Cruz 'was going to sell us out all along' after reviewing papers on a Senate desk." [ECF No. 1-1, Case No. 1:21-cr-334].

**Fourth**, in *United States v. Riley Williams*, 21-cr-618, Ms. Williams allegedly entered the Capitol building, but not the Senate chamber, and is alleged to directed others inside the Capitol building to proceed up a staircase in the direction of Speaker Pelosi's office where she is alleged to have taken a laptop computer or hard drive from Speaker Pelosi's office.  [ECF No. 1-1, Case No. 1:21-cr-618].

As illustrated from the above-stated cases, the facts and circumstances of each vary drastically and make clear the inconsistencies behind the government's charging decisions. With respect to Mr. Tanios, he was never alleged to have entered the Capitol building, let alone, rummage through or remove property from within it. Across each example, the government does not attempt to specify what "influence" these defendants had or exactly how they "obstructed" or "impeded" in a manner distinct or heightened from those numerous people not charged with violating § 1512(c)(2) for substantially similar conduct on January 6th. Such inconsistent charging decisions for a statute with such inherently vague words and an equally problematic "residual clause," under which Count Six of the Indictment in this case is charged, showcase how § 1512(c)(2) is unconstitutionally vague and fails to provide fair notice to Mr. Tanios.

## IV. CONCLUSION

Perhaps in its haste to exact swift prosecution in the wake of January 6th, the government cast a wide net of prosecutorial theories, parts of which took liberties with the legal application of § 1512(c). However, "hard cases cannot be permitted to make bad law." *See Morgan County v. Allen,* 103 U.S. 498 (1880). No matter the government's reasoning, no court has ever interpreted an "official proceeding," as that term is used in § 1512(c), so broadly as to encompass an event such as the certification of the Electoral College vote. As discussed above, the plain language of the statute and the traditional tools of construction all counsel against doing exactly that which the government would now urge this Court to do: to extend the application of § 1512(c) far beyond its common meaning and the intent of Congress when it was enacted. To the extent these arguments cast ambiguity onto § 1512(c)(2), "the rule of lenity still has some force." *United States v. Winstead*, 890 F.3d 1082, 1092 n.14 (D.C. Cir. 2018) (explaining "the rule of lenity, which favors a defendant if a criminal statute is ambiguous"). For all the forgoing reasons, Count Six of the Indictment against Mr. Tanios fails to state an offense and should be dismissed.

Respectfully submitted,

**GEORGE PIERRE TANIOS**

By:     /s/ Elizabeth B. Gross
        Elizabeth B. Gross
        WV State Bar No. 11567
        Federal Public Defender Office 230 West Pike Street, Suite 360
        Clarksburg, West Virginia 26302 Tel. (304) 622-3823
        Fax. (304) 622-4631
        E-Mail: Beth_gross@fd.org

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on February 24, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia and that a copy of which will be sent to the following:

**Anthony F. Scarpelli, Esq.**
**U.S. ATTORNEY'S OFFICE**
**555 Fourth Street, NW**
**Washington, DC 20530**
**(202) 252-7707**
**Fax: (202) 514-8707**
**Email: anthony.scarpelli@usdoj.gov**

**Gilead I. Light, Esq.**
**U.S. ATTORNEY'S OFFICE**
**555 4th Street NW**
**Ste 4832**
**Washington, DC 20816**
**202-252-6880**
**Email: gilead.light@usdoj.gov**

By:    s/ Elizabeth B. Gross
      Elizabeth B. Gross
      WV State Bar No. 11567
      Federal Public Defender Office 230 West Pike Street, Suite 360
      Clarksburg, West Virginia 26302 Tel. (304) 622-3823
      Fax. (304) 622-4631
      E-Mail: Beth_Gross@fd.org